Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. Employee is Betty J. Grant.
2. Employer is the North Carolina Department of Correction.
3. Key Risk Management is the servicing agent for the self-insured employer on this claim.
4. Defendant-employer regularly employs three (3) or more employees and is bound by the provisions of the North Carolina Workers Compensation Act.
5. The Industrial Commission has jurisdiction over the parties and all parties have been properly named in this action.
6. Plaintiff-employee was employed by defendant-employer on December 28, 1997 as a Staff Nurse.
7. Plaintiff-employees average weekly wage was $730.76, which yields a compensation rate of $487.17.
The Pre-Trial Agreement submitted by the parties is incorporated by reference. The documents attached to the Pre-Trial Agreement were stipulated into evidence at the hearing before the Deputy Commissioner.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner and finds as follows
 FINDINGS OF FACT
1. Plaintiff, who was fifty-five years old at the time of the hearing before the Deputy Commissioner, worked as a registered nurse at Eastern Correctional Center for approximately three and one-half years prior to the incident in question. As a staff nurse, plaintiffs job duties included providing treatment to the inmates, handling minor emergencies and seeing patients at the clinic calls. Plaintiff also occasionally worked in the pharmacy. Plaintiffs assigned shift started at 2:00 P.M. and ended at 10:30 P.M.
2. On December 28, 1997, plaintiff was advised by a correctional officer that James McCoy, an inmate at the prison, appeared to be having a seizure, and plaintiff was asked to come to Inmate McCoys cell. It was between 10:00 and 10:15 P.M. when plaintiff received the telephone call and went to the cell. Plaintiff took Mr. McCoys blood pressure and tried to get him to respond to her voice. Mr. McCoy opened his eyes briefly but was otherwise unresponsive. Plaintiff advised the correctional officers who were present that Mr. McCoy was coming out of a seizure and should rest. Plaintiff then returned to the medical department, without giving the officers further instructions, and spoke briefly to the third shift nurse, advising her that Mr. McCoy had a seizure and that he had a history of seizures.
3. Apparently Mr. McCoy did not have a history of seizures. On an earlier date, plaintiff had noted in Mr. McCoys chart that he previously attempted suicide. However, plaintiff did not check Mr. McCoys chart on the evening of December 28, 1997. Nor did she make any entries in his chart regarding her findings. As plaintiff admitted in her testimony, she was in a hurry, presumably so that she could leave since it was the end of her work shift. Mr. McCoy was later found not to be breathing and was transported to the hospital where he was subsequently pronounced dead. An autopsy indicated that Mr. McCoy died from a drug overdose. Plaintiff was notified of his death the following day.
4. A week or two later, plaintiff was instructed to report for work out of uniform because she was being temporarily assigned to a different position while her actions on the night of December 28, 1997 were investigated. Plaintiff was given a job in the master control room where she would be in a protected environment while working at the prison. Although it was standard protocol to reassign a nurse who was under investigation, plaintiff found the position to be humiliating and became very upset. On January 15, 1998, plaintiff went to Med Center I with complaints of feeling depressed and unable to cope. She was referred to Greenville Psychiatric Associates where on January 19, 1998 plaintiff saw Dr. Rice, a psychiatrist. Plaintiff then reported that she had felt depressed for a couple of months and that she had been discriminated against and harassed by a supervisor. Plaintiff also described her version of the incident of the inmates suicide.
5. Dr. Rice ultimately diagnosed plaintiff with post traumatic stress disorder and depression, although the reason for the former diagnosis was not adequately explained. Dr. Rice admitted that there had to be a life threatening type of situation or a very severe trauma in order to diagnose post traumatic stress disorder. Plaintiff experienced neither. Plaintiff was not present when Mr. McCoy died nor was she in a traumatic situation when tending to him. It appeared from the credible evidence that the stress which plaintiff experienced stemmed from the investigation of her actions of that night and her reassignment to non-nursing duties.
6. John Brown, the director of nursing for the Department of Correction, conducted an investigation and interviewed plaintiff, the third shift nurse and the correctional officers present on the evening of December 28, 1997. After conducting his investigation, Mr. Brown filed a report stating that plaintiff did not make an adequate assessment of Mr. McCoys condition, that the blood pressure readings she recorded after being notified of his death were not consistent with his condition, that plaintiff made inconsistent statements to him, and that plaintiffs failure to properly assess and respond to Mr. McCoys condition demonstrated incompetence and negligence on her part. Consequently, Mr. Brown recommended that plaintiff be terminated. Plaintiffs employment was therefore terminated in February 1998.
7. Dr. Rice continued to treat plaintiff for depression and what he diagnosed as post traumatic stress disorder until the date of the hearing before the Deputy Commissioner. On April 29, 1998, Dr. Rice hospitalized plaintiff for a week, and her condition reportedly improved greatly with inpatient treatment. At the time of plaintiffs hospitalization, she was also being investigated by the state nursing board, and Dr. Rice excused her from having to participate in the investigation until June 1998. However, plaintiff subsequently appeared before the board, and by the end of the year, her license was suspended for eighteen months, apparently for her failure to chart her findings regarding Mr. McCoy on a timely basis.
8. On Forms 18 and 33 filed with the Commission, plaintiff claimed that she suffered serious psychological injuries as a result of an accident occurring on January 13, 1998. The events of January 13, 1998, if any, were not clear from the evidence and it was presumed that the date was stated in error. In any event, plaintiffs claim that she was traumatized by the death of Mr. McCoy has not been accepted as credible. There was nothing unusual which occurred on December 28, 1997 during the time plaintiff was at work. Although plaintiff did not adequately address the condition of an inmate in her care that night, that inmate was alive when she left work. Plaintiff did not witness Mr. McCoys death. Furthermore, it was not Mr. McCoys death which upset her so greatly. Rather, it was the investigation into plaintiffs conduct that evening and the associated work reassignment with which plaintiff could not cope, even though the department followed standard protocol.
9. The psychiatric condition for which plaintiff was treated beginning January 15, 1998 was not due to an injury by accident arising out of and in the course of her employment on either December 28, 1997 or January 13, 1998.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following
 CONCLUSIONS OF LAW
1. The psychiatric condition for which plaintiff was treated beginning January 15, 1998 was not due to an injury by accident arising out of and in the course of her employment on either December 28, 1997 or January 13, 1998. N.C. Gen. Stat. 97-2(6); Anderson v. Northwestern MotorCompany, 233 N.C. 372, 64 S.E.2d 265 (1951).
2. Plaintiff is not entitled to benefits under the North Carolina Workers Compensation Act for her psychiatric condition. N.C. Gen. Stat. 97-2 et seq.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
 ORDER
1. Plaintiffs claim for workers compensation benefits is hereby DENIED.
2. Each side shall pay its own costs.
This the ___ day of May 2001.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/______________ RENE C. RIGGSBEE COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER
LKM/mhb